UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES O. MOLEN, et al.,<br><br>    Defendants. | No. 2:10-cv-2591 MCE KJN<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff United States of America ("plaintiff") filed this civil action on September 23, 2010, to reduce to judgment outstanding federal tax assessments and foreclose on real property owned by defendants. (ECF No. 1.) The tax assessments at issue are against defendants James O. Molen, Sandra Molen, and the James Orbin Molen Limited Partnership (collectively "defendants").[1] Defendants are proceeding without counsel in this action.[2]

---

[1] The Black Hole Adventures Trust and John Hugh Van Auken and William E. Baker, the alleged trustees of the Black Hole Adventures Trust, are also named as defendants in this action. However, these parties' involvement in this case is not directly relevant to the issue presented by the present motion, i.e. whether plaintiff's tax assessments should be reduced to judgment. In addition, the California Franchise Tax Board, California Employment Development Department, Butte County Assessor, Household Bank S.B. N.A., Advanta Bank Corporation, Citibank South Dakota N.A., MBNA Bank, Asset Acceptance LLC, and Wells Fargo Bank N.A. have also been named as defendants in this action because they may claim an interest in the Molens' real property that is the subject of this action. Similarly, these interests are not involved in the issue presented by plaintiff's motion. Accordingly, when the court uses the term "defendants," for purposes of the present motion, it refers only to James O. Molen, Sandra Molen and the James

1    Presently before the court is plaintiff's motion for partial summary judgment, filed
2 November 22, 2013, which seeks to reduce to judgment federal tax liabilities assessed against
3 defendants.³ (ECF No. 148.) On December 5, 2013, defendants filed a written opposition to
4 plaintiff's motion arguing, among other things, that the court should dismiss the motion for being
5 untimely filed. (ECF No. 155.) On December 12, 2013, the court ordered plaintiff to show cause
6 why the court should deem plaintiff's motion timely filed and ordered defendant to file a
7 declaration stating whether he was prejudiced by plaintiff's delay in filing its motion. (ECF No.
8 156.) Plaintiff filed a response to the court's December 12, 2013 order and defendants filed a
9 declaration of prejudice. (ECF Nos. 157, 158.) On January 27, 2014, the court discharged its
10 order to show cause, deemed plaintiff's motion timely filed, and ordered defendants to file an
11 amended opposition that complied with the requirements of Rule 56 of the Federal Rules of Civil
12 Procedure and Local Rule 260(b), including but not limited to the filing of a separate Statement of
13 Disputed Facts. (ECF No. 159.) Defendants filed an amended opposition on February 25, 2014,
14 which primarily consists of arguments recycled from defendants' previous declaration of
15 prejudice and fails to include a Statement of Disputed Facts. (ECF No. 161.) Plaintiff filed a
16 reply on March 4, 2014. (ECF No. 163.)

17    The court heard this matter on its May 8, 2014 law and motion calendar. Attorney Guy
18 Patrick Jennings appeared on behalf of plaintiff. James Molen, who is proceeding without an
19 attorney, failed to appear at the hearing.⁴

---

Orbin Molen Limited Partnership.

² This action was referred to the undersigned pursuant to Eastern District Local Rule 302(c)(21). (ECF No. 11.)

³ Plaintiff only seeks summary judgment with respect to the issue of whether the tax assessments made against defendants should be reduced to judgment and recognizes that the following two disputed issues remain for trial: "(1) whether James Molen obtained a refund in the first quarter of 2000 by fraud, and (2) whether the federal tax liens may be enforced against the Molen residence, held in the name of Black Hole Adventures Trust, as the nominee, alter ego, or fraudulent transferee of the Molens." (ECF No. 148-1 at 3.)

⁴ Defendants' recent filings reflect that Sandra Molen is deceased. (See ECF Nos. 134, 158, 161, 164 (all noting that Sandra Molen is "deceased" in the party caption).) The effect of her alleged

The undersigned has fully considered the parties' briefs, the parties' oral arguments, and appropriate portions of the record. For the reasons that follow, the undersigned recommends that plaintiff's motion for partial summary judgment be granted in full.

I. Plaintiff's Motion for Partial Summary Judgment

Plaintiff requests entry of summary judgment against defendants for tax liabilities that have accrued against them because of their failure to pay employment taxes due on the wages paid to employees in their flower shop and filing of frivolous tax returns that reported no income. Specifically, plaintiff "requests entry of judgment against James O. Molen in the amount of $194,025.86 for unpaid federal employment tax and $5,843.85 for frivolous return penalties, plus additional interest and other statutory additions that have accrued since November 30, 2013" for the tax periods including all quarters of 2000, 2001, 2002, 2003, the first and fourth quarters of 2004, as well as for frivolous return penalties assessed for 1997 through 2004.[5] (ECF No. 148-1 at 2, 11.) It further "requests entry of judgment against Sandra Molen in the amount of $3,867.27, for frivolous return penalties [assessed against her from 1998 through 2004], plus additional interest and other statutory additions that have accrued since November 30, 2013." (Id.) Finally, it "requests that judgment be entered against the James Orbin Molen Limited Partnership in the amount of $19,092.67 plus additional interest and other statutory additions that have accrued since November 30, 2013" for non-payment of employment taxes for the second and fourth quarters of 2005, all quarters of 2006, and non-payment of federal unemployment tax ("FUTA tax") for 2005 and 2006.[6] (Id.)

---

recent death on plaintiff's request for judgment against her is addressed in further detail below.

[5] This calculation includes a fraud penalty assessed against James O. Molen for the first quarter of 2000. One of the remaining issues for which plaintiff is not seeking summary judgment in the present motion is whether James O. Molen obtained a refund in the first quarter of 2000 by fraud. Plaintiff states in its motion that "if James Molen is found after trial not to have acted with a fraudulent intent in seeking the refund he obtained," then the court should make an adjustment to the final judgment reflecting the absence of such a penalty. (ECF No. 148-1 at 11.)

[6] By minute order issued on May 8, 2014, the court directed plaintiff to file a supplemental brief that included, among other things, an updated statement of the full judgment amount it requests against each defendant as of May 8, 2014, including any interest and other statutory additions that had accrued up until that date. (ECF No. 170.) In compliance with this order, plaintiff filed a

II.   Legal Standards Governing Motions for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." It further provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] A shifting burden of proof governs motions for summary judgment under Rule 56. Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need

---

supplemental brief on May 15, 2014 stating that the totals sought against each defendant, including additional interest and other statutory additions, as of May 8, 2014, were as follows:

James O. Molen Form 941: $196,948.69
James Orbin Molen Ltd. Partnership: $19,389.05
James O. Molen § 6702: $5,920.67
Sandra L. Molen § 6702: $3,918.11

(ECF No. 171 at 2.) Plaintiff includes a declaration of Michael Norris, an Advisory Insolvency Advisor for the IRS, to support these totals. (ECF No. 171-1.) Within his declaration, Norris describes the method he utilized to compute the total balances owed by each defendant up through May 8, 2014. (Id. at ¶¶ 6-10.) This declaration also includes a table listing the unpaid balance each defendant owes as of May 8, 2014, with respect to each tax period at issue in this case. (Id. at 3-5.) In addition, plaintiff attaches includes as exhibits reports reflecting the total amounts assessed against each defendant for each tax period at issue broken down by the amounts of interest and penalties assessed. (ECF No. 171-2.) Based on this evidence, plaintiff's representations appear to accurately reflect the outstanding balances against each defendant as of May 8, 2014.

[7] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial responsibility, the opposing party must establish that a genuine dispute as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate the existence of a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248). A party opposing summary judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). However, the opposing party "must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). However, to demonstrate a genuine factual dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . .

. . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citation omitted).

III. Undisputed Facts

In accordance with Local Rule 260(a), plaintiff filed a Statement of Undisputed Facts ("SUF") in support of its motion for partial summary judgment. (ECF No.148-2.) Defendants failed to directly respond to plaintiff's SUF beyond generalized arguments that the documentary evidence plaintiff's SUF is based on is all impermissible hearsay evidence that was obtained "by threat and duress of contempt of court."[8] (ECF No. 161 at 4.) Moreover, defendants did not file a statement of disputed facts, which violates Local Rule 260(b) and the court's order requiring defendants to file an opposition and supporting materials that comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 260. The procedure prescribed in Local Rule 260 contemplates identification of the facts that the parties assert are material, disputed or undisputed. "If the nonmovant does not 'specifically . . . [controvert duly supported] facts identified in the [movant]'s statement of undisputed facts,' the nonmovant 'is deemed to have admitted the validity of the facts contained in the [movant]'s statement.'" United States v. Burrell, 2013 WL 4710498 at *1 (E.D. Cal. Aug. 30, 2013) (quoting Beard v. Banks, 548 U.S. 521, 527 (2006)). Accordingly, for purposes of the motion for partial summary judgment, the court accepts plaintiff's evidence and proposed undisputed facts, outlined below, as the truth.

Defendants James O. Molen and Sandra Molen, doing business as Touch of Class Florist, had employees and paid wages and other compensation to those employees. (SUF ¶ 2.) Beginning in the second quarter of 2005, defendants operated their business in a similar fashion under the name "James Orbin Molen Limited Partnership" ("Partnership"). (Id. at ¶¶ 2, 18.) Defendants' workers were treated the same prior to and after the business was converted to the Partnership. (Id. at ¶ 20; James Molen Depo. (ECF No. 140-1) 120:22-25, 121:1-5.) Defendants' workers were paid by check at first and later by money order. (SUF ¶ 21.) As employers,

---

[8] The court addresses these arguments in detail below and finds them unpersuasive.

defendants were required to file quarterly IRS Form 941 federal employment tax returns reporting employee wages and their employment tax liability, file yearly IRS Form 940 federal unemployment tax returns reporting Federal Unemployment Tax Act ("FUTA") tax liability, and withhold income and taxes from employees' wages pursuant to the Federal Income Contribution Act ("FICA") and pay those taxes to the Internal Revenue Service ("IRS").  (Id.at ¶ 3.)  James O. Molen was a general partner under the Partnership and, therefore, is liable for the Partnership's tax liabilities.  (Id. at ¶ 22; Cal. Corp. Code § 16306(a).)

For the first quarter of 2000, James O. Molen submitted a refund claim under a Form 941C that requested a refund for the taxes paid on wages reported for 1997, 1998, and 1999.  (Id. at ¶ 5; Stacy Decl. (ECF No. 148-5) ¶ 9.)  On November 20, 2000, the IRS erroneously refunded $30,005.29 to James O. Molen after he engaged in what was determined to be a fraudulent scheme.  (SUF ¶ 5; Stacy Decl. ¶ 9.)  On March 29, 2004, the liability relating to the erroneous refund was assessed against James O. Molen along with a fraud penalty.  (SUF ¶ 5.)

IRS Revenue Agent Patricia Stacy prepared the assessments in the defendants' case for the 2000 tax year.  (SUF ¶ 6; Stacy Decl. ¶ 5.)  She estimated the wages paid by defendants for 2000 by looking back at the defendants' accounts for 1999 and assuming the same wage amount was paid for 2000.  (Stacy Decl. ¶ 5.)  It was on this basis that she calculated the employment tax defendants owed.  (SUF ¶ 6; Stacy Decl. ¶ 5.)

After Stacy made her assessments, defendants filed numerous Forms 941 for many periods in a single large batch in 2004.  (SUF ¶ 7.)  These tax returns were signed by Sandra Molen and a Certified Public Accountant.  (Id.)  Stacy adjusted the 2000 year assessments to reflect the amounts defendants reported on the tax returns they signed and filed in 2004 with the exception of the return filed for the first quarter of 2000 due to the fraud penalty assessed against James O. Molen during that period.  (Id.; Stacy Decl. ¶¶ 7, 9.)  Defendants' tax returns filed in 2004 were forwarded to the Service Center for processing.  (SUF ¶ 8.)  The assessments for 2001, 2002, and 2003 match the returns filed by the Molens.  (Id.)  However, defendants submitted false amended Forms 941 for all four quarters of 2004 and 2005, inaccurately reporting that they paid no wages subject to Social Security or Medicare taxes.  (Id. at ¶ 9; Order of Permanent Injunction,

Exhibit 1 (ECF No. 140) at ¶ 4.)

Defendants did not submit their required IRS Forms 940 and 941 by the mandated deadlines, nor did they make timely Form 941 tax deposits. (SUF ¶ 10; Exhibit 1 at ¶ 5.) Furthermore, defendants provided their employees false IRS Forms W-2 and failed to report Social Security and Medicare wages and taxes. (SUF ¶ 11; Exhibit 1 at ¶ 6.) Defendants attempted to justify their refusal to meet these legal obligations by making the patently frivolous arguments that the compensation they pay employees did not constitute wages and that the federal courts cannot enforce federal tax laws outside of the District of Columbia. (SUF ¶ 12; Exhibit 1 at ¶ 7.) As a result, defendants have accrued Form 941 employment tax liabilities, including interest and penalties, for the periods ending March 31, 2000, through June 30, 2006, and Form 940 liabilities for tax years 2000 through 2005. (SUF ¶ 13; Exhibit 1 at ¶ 8, n.1.) This total liability includes the $30,698.03 erroneous refund the IRS issued in 2000 after the Molens filed false amended IRS Forms 941 for the years 1997 through 1999. (SUF ¶ 14; Exhibit 1 at ¶ 8, n.1.) For the taxable years ending December 31, 1997, through December 31, 2004, defendants James O. Molen and Sandra Molen jointly filed frivolous returns reporting zero income, which resulted in the IRS assessing frivolous return penalties against them pursuant to 26 U.S.C. § 6702. (SUF ¶¶ 23-24; Exhibits 35-58.)

In July 2005, defendants submitted an "International Bill of Exchange" to the IRS in a supposed attempt to pay their tax liabilities, but this did not decrease defendants' tax liability because it was not valid legal tender. (SUF ¶ 15.) On October 11, 2006, a permanent injunction was issued against defendants, which, *inter alia*, enjoined defendants from failing to file accurate and timely IRS Forms 941 and 940 returns and from failing to timely withhold and pay over to the IRS all FICA and FUTA taxes required by law. (Exhibit 1 at 3-4.) After the Order of Permanent Injunction issued, defendants filed Forms 941 prepared by a CPA but did not pay the amounts shown due; defendants' accounts were mostly adjusted to match these returns. (SUF ¶ 16.)

In the amounts, and for the tax periods set forth below, a duly authorized delegate of the Secretary of Treasury made assessments against defendants for unpaid federal employment and

8

FUTA taxes, frivolous return penalties, interest, and other statutory additions as follows:

| Tax Period | Tax Type | Taxpayer | Unpaid Balance As of 11/30/2013 |
|---|---|---|---|
| 1st Q. 2000 | 941 | James O. Molen | $115,481.08 |
| 2[nd] Q. 2000 | 941 | James O. Molen | 14,169.87 |
| 3[rd] Q. 2000 | 941 | James O. Molen | 1,263.02 |
| 4[th] Q. 2000 | 941 | James O. Molen | 4,707.63 |
| 1st Q. 2001 | 941 | James O. Molen | 5,753.37 |
| 2[nd] Q. 2001 | 941 | James O. Molen | 4,937.48 |
| 3[rd] Q. 2001 | 941 | James O. Molen | 3,320.26 |
| 4[th] Q. 2001 | 941 | James O. Molen | 3,866.76 |
| 1st Q. 2002 | 941 | James O. Molen | 5,747.05 |
| 2[nd] Q. 2002 | 941 | James O. Molen | 4,702.88 |
| 3[rd] Q. 2002 | 941 | James O. Molen | 3,331.45 |
| 4[th] Q. 2002 | 941 | James O. Molen | 3,730.86 |
| 1st Q. 2003 | 941 | James O. Molen | 6,934.24 |
| 2[nd] Q. 2003 | 941 | James O. Molen | 4,826.07 |
| 3[rd] Q. 2003 | 941 | James O. Molen | 2,157.46 |
| 4[th] Q. 2003 | 941 | James O. Molen | $3,409.34 |
| 1st Q. 2004 | 941 | James O. Molen | 419.19 |
| 4th Q. 2004 | 941 | James O. Molen | 484.59 |
| 2001 | 940 | James O. Molen | 621.13 |
| 2001 | 940 | James O. Molen | 695.90 |
| 2001 | 940 | James O. Molen | 2,054.54 |
| 2001 | 940 | James O. Molen | 1,411.69 |
| 2nd Q. 2005 | 941 | JOM Ltd Ptrship. | 3,449.08 |
| 4th Q. 2005 | 941 | JOM Ltd Ptrship. | 3,884.75 |

| | | | |
|---|---|---|---|
| 1st Q. 2006 | 941 | JOM Ltd Ptrship. | 3,094.92 |
| 2nd Q. 2006 | 941 | JOM Ltd Ptrship. | 2,611.30 |
| 3rd Q. 2006 | 941 | JOM Ltd Ptrship. | 497.07 |
| 4th Q. 2006 | 941 | JOM Ltd Ptrship. | 987.76 |
| 2005 | 940 | JOM Ltd Ptrship. | 4,494.69 |
| 2006 | 940 | JOM Ltd Ptrship. | 73.10 |
| 1997 | § 6702 | James O. Molen | 767.85 |
| 1998 | § 6702 | James O. Molen | 730.26 |
| 1999 | § 6702 | James O. Molen | 730.26 |
| 2000 | § 6702 | James O. Molen | 730.26 |
| 2001 | § 6702 | James O. Molen | 730.26 |
| 2002 | § 6702 | James O. Molen | 730.26 |
| 2003 | § 6702 | James O. Molen | 730.26 |
| 2004 | § 6702 | James O. Molen | 694.44 |
| 1998 | § 6702 | Sandra L. Molen | 0.00 |
| 1999 | § 6702 | Sandra L. Molen | 251.79 |
| 2000 | § 6702 | Sandra L. Molen | 730.26 |
| 2001 | § 6702 | Sandra L. Molen | 730.26 |
| 2002 | § 6702 | Sandra L. Molen | 730.26 |
| 2003 | § 6702 | Sandra L. Molen | 730.26 |
| 2004 | § 6702 | Sandra L. Molen | 694.44 |

(Decl. of Paul Enjalran, ECF No. 148-6, at 5-6.)[9]

Proper notice has been given and demand made for payment of the assessments set forth above against defendants. Despite timely notice and demand for payment of the assessments,

---

[9] As part of its supplemental brief, plaintiff includes a declaration by Michael Norris that includes an updated table reflecting the unpaid balance for each of these tax periods through May 8, 2014, which includes the amounts of interest and other additions that have accrued since November 30, 2013. (ECF No. 171-1 at 3-5.)

defendants have neglected, failed or refused to fully pay these assessments, which remain due and owing, plus statutory interest and other additions allowed by law from November 30, 2013.

IV.     Discussion

The United States bears the initial burden of proof in an action to collect taxes. United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983). The government's burden can be met by the presentation of federal tax assessments. Id.; Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991) ("A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made."). "Normally, a presumption of correctness attaches to the assessment, and its introduction establishes a prima facie case." Stonehill, 702 F.2d at 1293 (citing Welch v. Helvering, 290 U.S. 111, 115 (1933)); Cracchiola v. Comm'r of Internal Revenue, 643 F.2d 1383, 1386 (9th Cir. 1981) ("[The Government's] method of calculating . . . income is presumptively correct and will be affirmed as long as it is rationally based."); United States v. Molitor, 337 F.2d 917, 922 (9th Cir. 1964)).

However, "[t]he presumption does not arise unless it is supported by a minimal evidentiary foundation." Id. (citing Weimerskirch v. Comm'r, 596 F.2d 358, 360 (9th Cir. 1979)). A tax payer may rebut the presumption of correctness by demonstrating that the assessments are "arbitrary and capricious," meaning that the assessments contain errors as to the amounts assessed. Stonehill, 702 F.2d at 1294 (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935)). If an assessment is based upon multiple items, then the presumption of correctness attaches to every item. Id. Proof of error as to one item destroys its individual presumption, but the presumption of correctness that attached to the other items remains. Id.

"[I]n the absence of contrary evidence, [a Certificate of Assessment is] sufficient to establish that notices and assessments were properly made." Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993). "A certificate of Assessments and Payments, or Form 4340, is admissible, highly probative evidence demonstrating that notices and assessments were properly made." United States v. Cowan, 535 F. Supp. 2d 1135, 1143 (D. Haw. 2008) (citing Hughes v. United States, 953 F.2d 531, 539-40 (9th Cir. 1992). Forms 4340 are admissible as self-authenticating official government records. Hughes, 953 F.2d at 540; Fed. R. Evid. 902(1). Furthermore, they

11

"qualify as '[r]ecords, reports, . . . or data compilations, in any form, of public offices or agencies, setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report,' thus meeting one of the definitions of public records set forth in Fed. R. Evid. 803(8).''  Hughes, 953 F.2d at 540.

Plaintiff has met its initial burden, meeting the applicable standard by submitting affidavits consisting of the Form 4340 Certificates of Assessments and Payments generated under seal and signed by an authorized delegate of the Secretary of the Treasury.[10]  The submission of these documents by the United States adequately evidences defendants' tax liability.  Specifically, this evidence shows that James O. Molen is liable in the amount of $194,025.86 for unpaid federal employment tax plus additional interest and other statutory additions that have accrued since November 30, 2013, for the tax periods including all quarters of 2000, 2001, 2002, 2003, and the first and fourth quarters of 2004, in addition to $5,843.85 plus additional interest and other statutory additions that have accrued since November 30, 2013, for frivolous return penalties assessed for 1997 through 2004.  (See Exhibits 3-24, 34-42.)  The evidence further shows that Sandra Molen is liable in the amount of $3,867.27 for frivolous return penalties assessed against her from 1998 through 2004, plus additional interest and other statutory additions that have accrued since November 30, 2013.  (See Exhibits, 43-48, 50.)  Finally, it shows that James Orbin Molen Limited Partnership is liable in the amount of $19,092.67 plus additional interest and other statutory additions that have accrued since November 30, 2013, for non-payment of employment taxes for the second and fourth quarters of 2005, all quarters of 2006, and non-payment of FUTA taxes for 2005 and 2006. (See Exhibits, 27-34.)  Because the United States' showing exceeds the minimal factual foundation necessary, the assessments receive a presumption of correctness and the burden of proof shifts to defendants to demonstrate any error.

Defendants appear to argue in their opposition that the documentary evidence plaintiff relies on in support of its motion, i.e. the Form 4340 Certificates of Assessments and Payments

---

[10] Plaintiff has also included tax returns prepared by defendants for the relevant tax return periods.  (See Exhibits 51-96.)

12

1  and defendants' signed tax returns, constitutes impermissible hearsay.  However, this argument is
2  without merit.  The Certificates of Assessments and Payments fall within Fed. R. Evid. 803(8)'s
3  public records exception to the hearsay rule.  Hughes, 953 F.2d at 540.  Furthermore, defendants'
4  signed tax returns are not hearsay because they are statements made by defendants being offered
5  as evidence against defendants.  Fed. R. Evid. 801(d)(2) (Opposing Party's Statement); Robson v.
6  C.I.R., 79 T.C.M. (CCH) 2225 (T.C. 2000) ("Statements on a Federal tax return are admissions
7  under rule 801(d)(2) of the Federal Rules of Evidence and will not be overcome without cogent
8  evidence that they are wrong."); Lare v. Commissioner, 62 T.C. 739, 750 (1974) ("Statements
9  made in a tax return signed by a taxpayer may be treated as admissions.").

10  Defendants further argue that plaintiff cannot use their tax returns as evidence against
11  them because they "were acquired by threat and duress of contempt of [a] court order." (ECF No.
12  161 at 4.)  However, "it is not duress for the IRS to use or to notify the taxpayer that it intends to
13  use all lawful means either to assess or collect a tax."  United States v. Toyota of Visalia, 772 F.
14  Supp. 481, 487 (E.D. Cal. 1991) aff'd sub nom. United States v. Toyota of Visalia, Inc., 988 F.2d
15  126 (9th Cir. 1993); see also George v. Commissioner, 139 T.C. 508, 515 (2012) (holding that the
16  threat of judicial contempt for not complying with a court order to sign Form 8332 does not
17  constitute duress); Ballard v. Commissioner, 54 T.C.M. (CCH) 580, 582 (1987).  Accordingly,
18  defendants' duress argument is not credible due to the absence of any showing that plaintiff
19  obtained or threatened to obtain these records via unlawful means.

20  For the reasons stated above, plaintiff provides evidence sufficient to meet its initial
21  burden of proof in this action and defendants have not come forward with any admissible
22  evidence or made any arguments sufficient to rebut this record.  There is no genuine dispute of
23  material fact as to the issue of whether defendants are liable for the taxes in the amounts assessed
24  above.  Accordingly, plaintiff's motion for partial summary judgment should be granted in full.

25  V.    Effect of Sandra Molen's Apparent Death on the Judgment Against Her
26  It appears from defendants' recent filings that defendant Sandra Molen has recently died
27  and has yet to be either dismissed from this case or replaced with an appropriate party.  (See ECF
28  Nos. 134, 158, 161, 164 (all noting that Sandra Molen is "deceased" in the party caption).)  The

court discussed this apparent fact with plaintiff's counsel during the hearing on the present motion for partial summary judgment and ordered plaintiff to file a supplemental brief discussing the impact of this ostensible event on the judgment sought against Sandra Molen. (ECF No. 170.) Plaintiff filed its supplemental brief in compliance with this order on May 15, 2014. (ECF No. 171.)

Rule 25(a)(1) provides that if "a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." Fed.R.Civ.P. 25(a)(1). Therefore, before a party can substitute a new party pursuant to Rule 25(a)(1), the court must establish that the substantive law controlling the suit permits survival of the cause of action. If the cause of action does not survive the death of a party, no substitution may be made.

Plaintiff's claims against Sandra Molen are for frivolous tax return penalties assessed pursuant to 26 U.S.C. § 6702. Accordingly, federal substantive law determines whether these claims survive Sandra Molen's death. Generally, to determine whether a federal cause of action survives the death of a defendant, the court must first determine whether the claim asserted against that defendant is civil or penal in nature. Reiserer v. United States, 479 F.3d 1160, 1162 (9th Cir. 2007) (citing United States v. $84,740.00 Currency, 981 F.2d 1110, 1113 (9th Cir. 1992)). "It is 'a well-settled rule that actions upon penal statutes do not survive the death' of a party." Id. (quoting United States v. Oberlin, 718 F.2d 894, 896 (9th Cir. 1983)).

Some statutes expressly state that an action survives upon the death of a party; however, many statutes, such as the one at issue here, do not include such express language. Accordingly, courts must determine whether the statute in question is civil or penal in nature by resorting to the two-part test articulated by the United States Supreme Court in Hudson v. United States, 552 U.S. 93 (1997). This test requires the court to first inquire into whether "the legislature has indicated an intention to establish a civil penalty." Reiserer, 479 F.3d at 1163 (quoting Hudson, 552 U.S. at 99). Second, the court must determine "whether the statutory scheme [is] so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." Id.

////

Plaintiff cites to no case law in its supplemental brief directly addressing the issue of whether a penalty assessed under 26 U.S.C. § 6702 is a civil remedy or a criminal penalty, and the court is aware of none. This appears to be an issue of first impression.

Plaintiff cites to the Ninth Circuit Court of Appeals' decision in Reiserer in support of its assertion that an action pursuant to 26 U.S.C. § 6702 is civil in nature, therefore surviving the death of a defendant. In Reiserer, the Ninth Circuit Court of Appeals addressed the issue of whether an action for civil tax shelter promoter penalties under 26 U.S.C. §§ 6700, 6701 survived the death of the defendant and held that the penalties under these statutes were sufficiently civil in nature that the action survived the defendant's death. Reiserer, 479 F.3d at 1164. Notably, in coming to the conclusion that the penalties under these statutes were not punitive in nature, the court reasoned that the fact that "[t]he statutes are found in Internal Revenue Code Chapter 68, titled 'Additions to the Tax, Additional Amounts, and Assessable Penalties,' rather than Chapter 75, titled 'Crimes, Other Offenses, and Forfeitures,' were a clear indication "that the legislature intended the penalties in question to be civil." Id. at 1663. Title 26 U.S.C. § 6702, the statute at issue in this case, also appears in Chapter 68 of the Internal Revenue Code, thus indicating that the legislature intended for the penalties assessed pursuant to it to be civil in nature.

However, the fact that the legislature intended the statute to be civil in nature is only the first step in the inquiry because a statute may be "so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." Reiserer, 479 F.3d at 1163. Plaintiff argues that the penalty assessed under 26 U.S.C. § 6702 is not so onerous as to raise it to the level of a criminal sanction. In support of this argument, plaintiff cites to Estate of Rau v. Commissioner, 301 F.2d 51 (9th Cir. 1962), where the Ninth Circuit Court of Appeals "held that a fifty percent addition to tax for fraud did not abate at the [defendant] taxpayer's death." Reiserer, 479 F.3d at 1164 (citing Estate of Rau, 301 F.2d at 56-57.) While Estate of Rau predates the United States Supreme Court's holding in Hudson and, therefore, did not analyze the issue of whether the cause of action was extinguished upon the defendant taxpayer's death under Hudson's two-part test, the Ninth Circuit Court of Appeals determined in Reiserer that the holding and reasoning Estate of Rau was in line with subsequent Supreme Court

15

precedent because "its reasoning rests in part on the same precedent as that relied on in Hudson." Reiserer, 479 F.3d at 1164 (citing Estate of Rau, 301 F.2d at 55); see also Louis v. Comm'r, 170 F.3d 1232, 1235 (9th Cir. 1999).

Plaintiff asserts that the penalty assessed against Sandra Molen under 26 U.S.C. § 6702, which was $500 for each violation,[11] is far less onerous than the penalty assessing a fifty-percent addition to tax for fraud that was held to be civil in nature in Estate of Rau, or the tax shelter promoter penalty that was held to survive the death of the defendant taxpayer in Reiserer. The court agrees. A flat $500 penalty for each frivolous return appears to be far less onerous in the typical case than the penalties deemed to be civil in nature in both Estate of Rau and Reiserer. Accordingly, the court finds that the frivolous return penalties assessed against Sandra Molen under 26 U.S.C. § 6702 survive her death.

Because plaintiff's claims against Sandra Molen under 26 U.S.C. § 6702 are not extinguished by her death, the court may order pursuant to Rule 25(a)(1) that she be substituted by a proper party. Furthermore, any party or Sandra Molen's successor or representative may make a motion for her substitution. Fed. R. Civ. P. 25(a)(1). However, if such a motion is not made within 90 days after service of a "statement noting [Sandra Molen's] death, the action . . . against [her] must be dismissed." Id.

Defendants have listed Sandra Molen as "deceased" within the party caption in their recent filings in this case, starting with the filing made on July 11, 2013. (See ECF Nos. 134, 158, 161, 164.) If these filings were to constitute a statement of death for purposes of Rule 25, then plaintiffs' claims Sandra Molen would have to be dismissed from this action because more than 90 days has passed without the filing of a motion for substitution. See Fed. R. Civ. P.

---

[11] For the years the assessments under Section 6702 were made against Sandra Molen, 1998 through 2004, the penalty for a frivolous return was $500 for each violation. This statute has since been amended and now imposes a $5,000 penalty on a person for filing a frivolous return. See 26 U.S.C. § 6702(a). The above analysis as to the issue of whether the civil penalty imposed by this statute is so onerous as to be criminal in effect is only with respect to the version of the statute under which the penalties at issue in this case were assessed against Sandra Molen. Accordingly, the court provides no opinion on whether the larger $5,000 penalty under the current version of this statute is so onerous that it is considered a criminal penalty under the Hudson test.

16

25(a)(1). However, in order for the 90 day period to commence, the statement of death must be more than a mere reference to the deceased party's death in a pleading or other filing and must conform to certain presentation requirements. E.E.O.C. v. Timeless Investments, Inc., 734 F. Supp. 2d 1035, 1056 (E.D. Cal. 2010) (quoting Grandbouche v. Lovell, 913 F.2d 835, 836 (10th Cir. 1990) ("The 90 day time period is not triggered 'unless a formal suggestion of death is made on the record, regardless of whether the parties have knowledge of a party's death,' and the 'mere reference to a party's death in court proceedings or pleadings is not sufficient.'"); Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994) (party must serve the nonparty successors or representatives of the deceased with a suggestion of death in compliance with the requirements set out in Rule 4 of the Federal Rules of Civil Procedure); Colon v. Home Depot, U.S.A., Inc., 22009 WL 4158783 (E.D. Cal. Nov. 18, 2009) (finding that the mere reference to plaintiff's death in a joint status report filed with the court was insufficient to trigger the 90 day period under Rule 25(a)(1)); Fed. R. Civ. P. 25(a)(3) (requiring a statement noting death to be served on parties a provided in Rule 5 of the Federal Rules of Civil Procedure). Accordingly, defendants' mentions of Sandra Molen's alleged death up until the present have been insufficient to trigger the 90 day period under Rule 25(a)(1).[12]

As noted above, no party has filed a motion requesting the substitution of Sandra Molen with a proper party. Under Rule 25(a)(1), the court *may* order a such a substitution. However, the court is not required to do so and may proceed to judgment with the original named parties when no party has moved for substitution. See 6 Moore's Fed. Practice 3d § 25.12(5) (citing Ciccone v. Secretary of Dept of Health & Human Servs. of U.S., 861 F.2d 14, 15 (2d Cir. 1988), Fariss v. Lynchburg Foundry, 769 F.2d 958, 962-63 (4th Cir. 1985), and Copier By & Through Lindsey v. Smith & Wesson Corp., 138 F.3d 833, 835 (10th Cir. 1998)). Plaintiff requests that the court enter judgment in this case against the currently-named defendants, including Sandra

---

[12] Plaintiff, in its supplemental brief, requests that the court grant it an extension of time to file a motion to substitute parties up until the date of trial in the event that defendants do file a formal statement of death that meets the requirements of Rule 25. (ECF No. 171 at 5-6.) While it is premature to grant such a request, the court informs plaintiff that it is amenable to such a future request in the event that defendants do file a formal statement of death.

Molen, because plaintiff is presently unable to ascertain who the successor in interest or executor of her estate may be, or whether Sandra Molen has an estate beyond the property already before the court.  (ECF No. 171 at 6.)  Furthermore, plaintiff believes that defendant James O. Molen may be the successor in interest or executor of Sandra Molen's estate, thus negating the need for a substitution of an outside party.  Finally, plaintiff asserts that facts clarifying the above issues can be ascertained during trial and a proper substitution, if necessary, can then be made at that time.  The court agrees.  Therefore, Sandra Molen should not be substituted at this time and judgment should be entered against her to the extent requested in plaintiff's motion for partial summary judgment.

VI.  Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 148) be GRANTED.

2. Judgment be entered against James O. Molen in the amount of $194,025.86 for unpaid federal employment tax and $5,843.85 for frivolous return penalties, plus additional interest and other statutory additions that have accrued since November 30, 2013.[13]

3. Judgment be entered against Sandra Molen in the amount of $3,867.27 for frivolous return penalties, plus additional interest and other statutory additions that have accrued since November 30, 2013.[14]

4. Judgment be entered against the James Orbin Molen Limited Partnership in the amount of $19,092.67 plus additional interest and other statutory additions that have accrued since November 30, 2013.[15]

////

---

[13] As of May 8, 2014, when additional interest and other statutory additions are taken into account, this judgment amount is $196,948.69 for unpaid federal employment tax and $5,920.67 for frivolous return penalties.

[14] As of May 8, 2014, when additional interest and other statutory additions are taken into account, this judgment amount is $3,918.11 for frivolous return penalties.

[15] As of May 8, 2014, when additional interest and other statutory additions are taken into account, this judgment amount is $19,389.05.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated:  May 21, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE